By the Court.—Sedgwick, Ch. J.
—The alleged false representations Were not made by the defendant directly to the plaintiff, but were made through the Bradstreet Mercantile Agency, as a channel of communication. Eaton C. & B. Co. v. Avery (83 N. Y. 31), says of the responsibility of a defendant in such a case: “A person furnishing information to such an agency in relation to his own circumstances, means and pecuniary responsibility, can have no other motive in so doing than to enable the agency to communicate such information to persons who may be interested in obtaining it, for their guidance in giving credit to the party.” “ But the defendant knew that they were a mercantile agency, whose business it was to give information as to the standing and means of dealers, and that it was resorted to by merchants to obtain such information^ By making a statement of the financial condition of his firm to such an agency, he virtually instructed it what to say if inquired of.” To make a defendant liable (p. 33), the testimony should show that the statements “were made with the intent that they should be communicated to and believed by persons interested in ascertaining the pecuniary responsibility of the firm, and with intent to procure credit and defraud such persons thereby, and such statements were communicated to the plaintiff and relied upon by it, and the alleged sale was procured thereby.” I wish here specifically to notice that in this declaration of what the law is, it is implied that the evidence must show that the defendant was the responsible cause of the plaintiff’s relying on the statement. Of course this would be shown, in most cases, by the mere fact of the making of the representations when the defendant was proceeding to buy the goods. There might, however, be cases in which the representations were made to induce one' sale only, and yet the seller would be induced by the statements to make another sale, at a future time, when *10 the buyer would not be responsible for the operation of the seller’s mind.
As the responsibility of the defendant in such cases depends upon the character'of the agency as a usual means of communication, it is shaped and limited by the peculiarities of the methods of business of the agency. And on the other hand, the plaintiff in relying upon the communications from the agency, must himself take into account both those peculiarities and the fact that the defendant made the statement in view of them.
, In the present case, there was some testimony as to the methods of business of the agency, and agencies of this kind are so well known that the courts can take judicial notice of their business and office (Eaton v. Avery, supra, 31). By the testimony, the agency carried on the usual business of a mercantile agency—to report to business firms the credit and standing of business men. The plaintiffs were subscribers to the agency. It was not shown how often, as a habit, the agency applied to business men for information as to their means. As a fact in this case, the agency applied to the defendant for a statement of his financial condition in February, 1881, and .again in June, 1881. Both statements were spread upon the books of the agency. What was done in this case, it may be assumed was done in general as t0‘ all business men. Indeed, the methods of business require that applications be made from season to season repeatedly. The profit or loss of each business season must cause a change of the financial condition at the beginning of the season, or the fact, that nothing has been made or nothing lost, is an important piece of information.
A just conclusion in my judgment is, that when the plaintiffs received the statement of February, they could not be justified in assuming that it was made by the defendant, as something which he meant they should sell goods upon for all future time, but only for that space of time that, according to the custom of the agency, would elapse, before another application be made, and another statement pro *11 cured. The defendant could assume that after the application in June, the plaintiffs would act upon the custom of the agency, and giving no further operation to the first statement than it should properly have, would not act upon it, except in connection with the June statement. The defendant would.be bound to know that the statement he made in February would be communicated to the plaintiffs, and would also have the right to believe that they would learn of the statement in June.
It was observed in the course of-the argument at the bar, that the agency did not furnish the information it. received to its subscribers always and uniformly, but gave it only to such of them as inquired for information, nevertheless, it is true, that the defendant would be liable for the February statement, on the ground that when he proposed to buy goods he would have convincing reason to believe that the plaintiffs, if subscribers to the agency, would apply to it. He must have the benefit of the consideration that his mind would work in a like manner upon proposing to buy goods after the second statement.
A more particular view of the facts will corroborate, I believe, these propositions. In February, 1881, the defendant said to the agency, “I have a stock on hand of $2,500, and no liabilities, as I pay cash for all my purchases.” In its report to the plaintiffs, the agency added that the defendant had been in business for forty years, had twice failed—the last time three or four years before, and effected a compromise at fifty per cent.; that his wife is said to own property, the income of which supports the family; that parties who have known him, speak of him as honest and industrious, doing a small, close business, and not doing much more than making a living for himself ; that he is not known to be asking any, credit, as he became so slow in his payments, that those who have sold him for years decline selling him except for cash.
In May, 1881, the plaintiffs’ salesman sold the defendant certain goods. The testimony for plaintiffs is, that before selling, they obtained from the agency a report that con *12 tained the matter that has been given. On the trial, the witness who swore to this produced a report of the -agency as the one he acted oh in May. This, however, was dated in November. Probably, the witness meant to say that the report dated November, was a duplicate of the report he received in May. If it be otherwise, the plaintiffs’ case failed, for the goods in action were all sold before November. At any rate, the goods sold from May 11, to June 21, on five occasions, in amounts from $112 to $26, were all paid for. The aggregate was $286.
In August, 1881, the plaintiff sold the defendant, and in September and October four parcels, in amounts from $557 to $62, amounting in ail to $950.
Before August and in June, the agency had applied to the defendant and he had made a declaration which was, as has already been said, placed upon the books of the agency. It was as follows: “He declines giving any information; he is believed to be working with his wife’s money; is stated to have failed two or three times ; regarded as of little responsibility, and jobbing houses in the city say they would sell him only for cash.”
It is extremely doubtful whether the testimony shows that the plaintiffs did not learn of this statement, as I call it, of June, and indeed, this would have demanded attention, if in the disposition of the case on - the trial, counsel had not assumed that the plaintiffs had not learned of it.
In connection with the reflections that come from the general nature of the business of the agency, as calling for repeated application to persons likely to ask credit, an illustration of the reason and probability of it is found in the February statement. It is manifest from this, that the defendant had a very, debilitated credit. A breath of disaster would destroy it. A few men not paying their bills, would make him insolvent, for he was a tailor doing a small, close business. The plaintiffs must have known that the agency would make an additional investigation after February and before August 16. The defendant must have *13 thought that the facts obtained in June would be learned by the plaintiffs before they would sell to him in August.
I therefore, am of the opinion that it appeared by the undisputed testimony, that the plaintiffs were not induced by the defendant to rely upon the statement of February by itself, but' upon it in connection with such further statement, as in the usual course of the business would be made before August. The plaintiffs would learn from the two coupled together, that the defendant refused to reassert the facts stated by him in February, and therefore did not claim any credit upon an implied assertion by him,
‘ that his first statement still held good. The defendant had reason to believe that the plaintiffs had learned of the second statement, and were not about to rely upon the first statement. On either proposition, the defendant was not liable, and the court made a correct disposition of the case.
In my opinioft, the judgment should be affirmed, with costs.
Freedman, J., concurred.