Horace Russell, J.—Dissenting.
—[After stating the facts as above.]—The question presented to us is raised by the plaintiffs’ objection to the admission of the testimony in regard to the second statement in the books of Bradstreet & Company, entered on June 20, and by their exception to the dismissal of the complaint on the strength of that entry.
It was settled in Eaton, Cole & Burnham Co. v. Avery (83 N. Y. 31), if indeed there remained any doubt on the subject before that case was determined, that false statements as to financial condition made to a commercial agency, with the intent that they should be communicated to persons seeking to ascertain financial responsibility, and with intent to procure credit, and defraud, constitute a sufficient foundation for an action of deceit by persons defrauded by such means. The proof in the case before us, *14 sufficiently established the making of representations, their falsity, the defendant’s knowledge of their falsity, and that the plaintiffs relied upon them, to demand the submission of the case to the jury, unless the judge below was right in taking the case from them, because of the effect to be given to the statement of June 20. The rightfulness of the decision below depends upon the answer to two questions: (1) Were the plaintiffs chargeable in law with the information received by the Bradstreet'Company % and (2) Was the statement entered in the books of the Bradstreet Company on June 20, such a one as, so far as the defendant was concerned, retracted the statement of February 25, so that the plaintiffs were no longer entitled to rely and act upon th¿ faith of that statement \
It is not open to question, that a principal is chargeable in law with information communicated to his general agent or to his special agent in the course of negotiations relating to a particular business. This rule of law has been adopted, because in such transactions, the agent takes the place of the principal, and in all things substantially acts and decides as the principal might if he were personally present, is, in short, his alter ego.
Had the defendant communicated to the plaintiffs directly, a recall of the statement of February 25, he certainly could not be held in this action. Had he communicated it to that person, whether one of the plaintiffs or their business manager, who is known as the “credit man” of commercial houses, he could not be held. So, had he communicated a retraction of the statement to the traveling salesman, who apparently conducted the. transaction, the plaintiffs would be chargeable with knowledge of such retraction, and could not recover in this action. But I cannot understand on what theory Bradstreet & Company can be regarded either as the general agents of the plaintiffs, or as their special agents with reference to • the business transactions between the plaintiffs and their customers, so that information communicated to them can *15 be held, in law, to have been communicated to the plaintiffs themselves. True, Bradstreet & Co. were, in a certain sense, the agents of the plaintiffs ; but, so far as this error book discloses and our general knowledge on the subject goes, the extent of their agency was that they agreed to furnish, upon inquiry, such information as they had in regard to the financial condition of persons in relation to whom their subscribers might desire to inquire.
In the cases of this character in the books, the commercial agencies are held to have been the agents of the purchaser so far as the communication of the information derived by him was concerned. Except that the plaintiffs paid, it is presumed, for their information, there seems to be no better reason for holding the Bradstreets the agent of one party than of the other; in ’which case, before the plaintiffs’ action could be defeated, actual knowledge must be brought home to them.
The cases cited by the counsel, on the argument, in support of the theory on which this case was disposed of below (Holden v. N. Y. & Erie Bank, 72 N. Y 286; Bennett v. Buchan, 76 Id. 386; Whitney v. Groot, 24 Wend. 82; Rogers v. Warner, 8 Johns. 92), fall far short of sustaining that theory.
In Holden v. N. Y. & Erie Bank, it was held that the bank was chargeable with the knowledge possessed by its president and chief financial officer in regard to a transaction conducted by him as such president.
In Bennett v. Buchan, it was held that the principal was chargeable with the knowledge of the agent who “negotiated the whole business.”
It -would certainly be an extension of the doctrine of those cases to impute to a principal, information which persons whom they sometimes consulted, had acquired.
Whitney v. Groot, and Rogers v. Warner, were actions against sureties, in which the agreement of the surety was construed to relate only to the first sale to be made to the persons whose purchases they guaranteed.
*16 Mercantile agencies are actual, not constructive agents ; that is, they act within actual, not constructive limitations ; and as persons can be held liable for statements made to them, only by showing that such statements were communicated to other persons as a basis for credit, so, in my judgment, can they only be relieved by showing that subsequent statements modifying the first, were actually communicated to the same persons. That they made subsequent and different statements, is, of course, admissible in evidence on the question of intent, but that is a different question from the one I am considering.
But even if it should be held that information of a ■ retraction of a former statement made to the commercial agency, should, as a matter of law, be imputed to a subscriber to the agency, the mere declination in June to make a new statement after having .made one in February, cannot properly be regarded as a retraction of the statement made in February. It might perhaps, excite some uneasiness on the part of a creditor, that a debtor should be unwilling to reiterate a statement made five months previously, but the creditor might very well attribute that unwillingness to the natural disposition of mankind, to resent frequent and impertinent inquiry. At any rate, such mere refusal was not of such a character as forbade his continuing to rely upon a positive and definite statement made a few months previous. The rumors referred to in the second statement, were merely given as rumors by the Mercantile Agency. They related to matters peculiarly within the knowledge of the defendant, and were covered by the statement made by him in February. If those rumors had been actually communicated to the plaintiffs they would have had a right to say “ these are rumors which may or may not have foundation; we have the positive statement of our customer given in February that he was entirely solvent, and owed no debts; these rumors relate, not to any changed condition of affairs, but to his condition at the time we extended him credit as well as now; we have still a right to rely upon his *17 statement to us, and we will do so.” Nor would it indicate a lack of business prudence on their part to do so.
The question for us is not how a jury will regard these transactions, but whether the court ought to have taken them from the jury altogether.
I am of the opinion that it ought not to have done so,‘ and that, for that reason, judgment should be reversed and a new trial ordered, costs to abide the event.