### KELLY *v.* GOULD *et al.*

*(Supreme Court, General Term, First Department. June 3, 1892.)*

1. DECEIT—FALSE REPRESENTATIONS.

The mere recommendation by a person interested in the construction of a railroad, that a proposition for construction be accepted, is not a representation on which an action for deceit can be maintained by a bank which cashes a draft for contractors, drawn by them on the construction company which made a contract with them.

2. SAME.

Where the secretary of a construction company without authority makes a contract with a person to go on with the construction of a railroad, and directs him to proceed with the work, and without actual knowledge states to him that the funds had been raised for the work, having reason to know that these representations will be repeated to a third person in order to raise money for the purpose of going on with the work, he will be liable to such third person, by reason of the representations, for the money advanced to the contractor.

Exception from circuit court, New York county.

Action by Eugene Kelly against Jay Gould and others for false representations. After plaintiff had closed his case the complaint was dismissed, and exceptions to the order were directed to be heard at the general term in the first instance. Exceptions sustained as to defendant Work, and overruled as to other defendants.

For opinions on demurrer to complaint, see 2 N. Y. Supp. 600, and 6 N. Y. Supp. 845.

Argued before VAN BRUNT, P. J., and O'BRIEN and PATTERSON, JJ.

*Ewing, Southard & Fairchild*, for plaintiff. *J. F. Dillon* and *Mr. Pincoffs*, for defendants.

PATTERSON, J. The plaintiff herein sues, as the assignee of the Milmo National Bank, on a specific claim asserted against the defendants or some of them. That claim arises out of transactions consisting of the advance of money by the bank (which was located in Texas) to a certain firm of contractors, viz., Messrs Hunter, Sampsel & Wells, on drafts drawn by such contractors on one of the defendants, and which drafts were dishonored. The firm referred to was, at the time the drafts were drawn and the money was

advanced, engaged in the work of building, as contractors, a railroad in Mexico, with which enterprise it is claimed all the defendants concerned in this appeal were connected, or in which they had some interest impelling them to do what is now urged as a ground of liability against them. It is asserted by the plaintiff that the money was advanced by the Milmo Bank relying on representations communicated to its cashier by Mr. Sampsel, one of the contracting firm; that such representations were made by the defendants George J. Gould, Jay Gould, Sage, Dodge, and Work to Sampsel, with intent that they should be communicated to and be acted upon by third parties, who might advance money to the contractors; that those representations were false, and were known to be false by the defendants making them; and hence that such defendants are liable for their deceit and fraud.

It is the settled law of this state that an action on the case for deceit in representations will lie in favor of parties other than those to whom such representations are directly made, under certain circumstances. In *Eaton, etc., Co.* v. *Avery,* 83 N. Y. 31, the general rule applicable to such cases was stated in the unanimous opinion of the court, and it was held that it is not essential that a false representation should be addressed by the person making it directly to the party who seeks redress for having been deceived and defrauded thereby. The rule of liability in such cases differs necessarily in one respect, but only in one, from that which obtains in an action brought by the person to whom the representations are directly made. The elements necessary to the maintenance of an action such as the present are that the representations, if proven to have been made, must be false; that they must have been known by the defendant to be false; or it must be shown that he had reason to know that they were false; or that he assumed and intended to convey the impression that he had knowledge of the facts when he really was without such knowledge; and that the false representations must have been made with the intent that they should be communicated to and acted upon by third parties, and that they were the inducing cause of the act, resulting in loss to such third parties. These are the recognized *criteria* of liability in actions of this character, and we have endeavored to state them in the simplest and plainest terms. *Eaton, etc., Co.* v. *Avery, supra; Oberlander* v. *Speiss,* 45 N. Y. 175; *Meyer* v. *Amidon,* Id. 169.

At the trial at circuit the learned judge dismissed the complaint, on the ground that the proof failed to establish the cause of action, and ordered the exceptions to be heard in the first instance at the general term. What is now before us is the correctness of this ruling, in view of what we conceive to be the principles of law controlling the case, and the determination of that question requires a critical and careful analysis of the whole record as it comes before us, concerning the evidence as it stood when the plaintiff rested the case. We are thus brought to a consideration of the facts, and at the threshold we find that there are different sets of parties sought to be made liable. As to the several corporations, it is clear that there is no liability imposed upon them. As to the defendant George Gould, it is also clear that he did not in any way participate in any of the matters directly involved in the action, as he was absent in Europe at the time of their occurrence. The true starting point of the case on the facts is the inquiry what took place between Sampsel and the cashier of the Milmo Bank, in Texas, with reference to the advances of money being made in consequence of representations of any of the defendants; for the only statements made to the Milmo Bank were to the cashier by Sampsel, and the attempted connection of the parties (other than the corporations) who are sought to be held liable on the alleged representation must be accomplished by showing that the cashier of the Milmo Bank was influenced by statements made by Mr. Sampsel to such cashier by authority of those who are sought to be held liable in this action. Sampsel's statements are repeated in detail in the testimony of the cashier of the bank, and therefore

so much of the case is proven; but Sampsel's authority to bind others by his statements must also be established. We must have regard to the situation of the parties at the time the alleged false representations were made in New York to Sampsel, and the first fact of importance is that, prior to the transactions which form the staple of this action, there had been two railway companies in Mexico constructing, or authorized to construct, separate works under concessions granted by the Mexican government, and which for general purposes of reference only were called the "Grant Road" and the "Gould Road." On one of the roads certain work had been performed by the firm of contractors of which Mr. Sampsel was a member, and during the progress of that work the contractors had raised money, with the knowledge and authority of those who were the promoters of or interested in it, from the Milmo Bank; and thus relations were undoubtedly established which would give to the Milmo National Bank some ground for the right to assume that Mr. Sampsel and his copartners, in drawing drafts to pay for construction, were authorized to do so by some of the parties interested. Those parties were Dodge, Work, Jay Gould, and Sage; but the enterprise with reference to the building of one particular road seems to have been checked, and subsequently, and on further concessions of the Mexican government, the two roads were to be consolidated, with the proviso that work should be resumed at a particular day. The firm of contractors had kept their force in Mexico ready to prosecute the work, but it seems to have been necessary that before they went on with it arrangements should be made in New York city with the promoters of both corporations as consolidated to raise funds to go on with that work, and to authorize the contractors to continue it. Mr. Sampsel came to New York, and on arriving here he found this state of facts to exist: An alleged new construction company had been organized in form, or, at least, the skeleton of such a company had been created. Of that skeleton corporation the defendant Work was secretary, and the defendant George Gould was president. When Mr. Sampsel arrived in New York he went immediately to Mr. Work, and talked with him about the subject, and everything that seems to have been subsequently ordered respecting that corporation and its operations was done directly between Work and Sampsel. After interviews with Jay Gould and Sage, Work appears to have stated something that satisfied Mr. Sampsel that his firm might proceed with the work of construction, so as to save the concession within the time limited; but there is nothing that we can find of any representation or statement, even on Mr. Work's testimony, (and he was called as the principal witness for the plaintiff,) which would connect Jay Gould or Sage or Dodge with any representation actually made, or with any inducement actually held out, by which Sampsel was authorized to put them in the position of representing anything on which a third party would be induced to rely in advancing money for the purposes of building the road. All that Jay Gould or Sage certified to respecting the matter was a mere recommendation, and that related to the acceptance of the contract by the new construction company and the proposition of Sampsel. That was not a representation. No fact is stated; and what is claimed to be a communication from Sewards respecting negotiations and money to be raised abroad, to carry on the new scheme for the consolidated roads, is in no way a false representation, because such communication was undoubtedly made on authority, as clearly appears from the proof, and there was no bad faith whatever in making it.

The principal testimony relied on by the plaintiff is, as already stated, that which comes from the defendant Work, who was called by the plaintiff as a witness, and that testimony certainly requires and has received very serious consideration. Work has sworn to certain statements made by Jay Gould, and says that it required a lengthy recital to explain the relations of the different companies to each other and Jay Gould's particular relation to this transaction. It is evident from his testimony that Jay Gould knew very little, if

anything, about the new construction company, or its taking the contracts for building the road referred to under the consolidation. Work was the secretary of the new Southwest Construction Company, but we do not find anything in the whole of the testimony binding Jay Gould to any statement whatever, except the mere recommendation, and the same finding will apply respecting Sage and Dodge. There are a great many statements of beliefs and opinions in the testimony of Work not amounting to proof, but the whole of what he says is so inconclusive and so far apart from anything to charge the other defendants with false representations that it would have been error on the part of the learned judge to have submitted the case to the jury upon the *criteria* of liability referred to above, as the tests in law leading up to responsibility for false representations, in a case of this character. The testimony of Sampsel is clear that he never had any conversation, either with Gould or with Sage or with Dodge, which would authorize the making of the statements which seem to have been the inducing cause of the action of the Milmo Bank in cashing the drafts in suit. Sampsel's testimony as to his conversations with Dodge at Council Bluffs, and his other conversation, do not make any one responsible, as we read the case, for any statements that Sampsel may have made to the cashier of the Milmo Bank, no matter in what good faith they may have been made by Mr. Sampsel, (and we have no doubt of his good faith and honesty,) as representations authoritatively made that the capital had been raised and that the money was forthcoming. Even the correspondence with Major Worthen, the engineer, as it appears in the record, does not carry out the plaintiff's view, and, although Dodge may have said that the same interest would construct the new road in addition to that connected with the Grant Road, there is nothing in that statement to furnish the basis of false representations upon which third parties were authorized to act, or upon which it was supposed they would act. We conclude on the whole testimony, as to all the defendants except the defendant Work, that a case has not been made out which would have authorized the learned judge at the circuit to submit the issues to the jury, and that the motion for a nonsuit was properly granted with respect to all the defendants other than the defendant Work. Concerning him a different state of facts is presented. We think it is clear that, apart from any question involving moral turpitude, he proceeded in the whole transaction to authorize Mr. Sampsel to go on with the work of construction of the consolidated roads without knowledge and without authority, and in such a way as to make him liable for his acts in the premises. He signed the contract in the name of George Gould, president, by himself (Work) as secretary, and when he knew, or might have known, that the contractors intended to rely upon his representations, and when or under circumstances rendering it necessary for such contractors to repeat those representations to third parties, in order that money might be raised for the purpose of going on with the work of construction. We think Work was bound to know, from the situation and special circumstances, the truth or falsity of the statements that he made to Hunter, Sampsel & Wells, and that they would be repeated to Major Worthen, the engineer in charge of the work, and to the Milmo National Bank; and whether it was overzealousness, in the absence of actual fraud or intent to deceive, or something else, it is clear that he acted with precipitancy, and recklessly, and that, at least, and in anticipation of what he thought might be done, and from sanguine expectation, he made representations and statements for other people to act upon, as to which he had no actual knowledge. The circumstances connected with the $2,000 draft justified both Mr. Sampsel and the Milmo National Bank in relying upon the statements thus made by the defendant Work as to the contract which he authorized being made for going on with the construction of the work.

Something has been urged on argument respecting the duty of the defendants Jay Gould and Sage and Dodge to communicate to Sampsel or to the

Milmo Bank the failure of the negotiations in Europe, when it was ascertained that the Sewards report was inaccurate, and that the money could not be raised. This would be so, of course, were it not for the fact that upon the whole case it does not appear that either of the defendants now referred to had been put in such a position, by way of representations emanating from them, as to require them to take any action with respect to giving information concerning occurrences as to which they were not bound by any representations. We therefore conclude that the complaint was properly dismissed as to all the defendants except the defendant Work, and that as to him the exceptions should be sustained, and a new trial ordered, with costs to abide the event; as to the other defendants, exceptions overruled, and judgment directed dismissing the complaint, with costs.

VAN BRUNT, P. J., concurs.

O'BRIEN, J., (*concurring.*) The questions as presented by the demurrer to the complaint and upon the testimony offered upon the trial are entirely different. The only doubt created in my mind upon the record, as to the disposition made by the trial judge, related to the liability of two of the defendants, J. Henry Work and Jay Gould. I concur with Mr. Justice PATTERSON as to Work, and, after some hesitation, also in his views as to the liability of Jay Gould upon the facts proved. I therefore concur.