## HUMPHREY et al v. SMITH.

(Supreme Court, Appellate Division, Fourth Department.　June 17, 1896.)

1. SALE—RESCISSION—REPRESENTATIONS TO COMMERCIAL AGENCY.
    In an action to rescind a sale on the ground that it was induced by false representations of the buyer as to his financial condition, the seller may show statements made by the buyer four months before the sale to the agent of a commercial agency, which statements were transmitted to the agency, and a copy thereof furnished by it to the seller.

2. SAME—BONA FIDE PURCHASERS.
    The rule that the declarations of a buyer are not competent to impeach the title of a purchaser from him in good faith does not apply to his assignee for the benefit of creditors.

Replevin by Ira B. Humphrey, Charles D. Humphrey, and Charles O. Tracy against Edward O. Smith. A verdict was directed in favor of defendant, and plaintiffs move for a new trial on exceptions ordered to be heard by the appellate division in the first instance. Granted.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

J. H. Metcalf, for plaintiffs.

Henry M. Field, for defendant.

FOLLETT, J. This action (replevin) was begun in March, 1895, to recover goods purchased by the defendant's assignor by alleged fraudulent representations. The plaintiffs are partners under the firm name of Humphrey Bros. & Tracy, engaged in the business of manufacturing and wholesaling boots, shoes, and rubbers at Towanda, Pa. For several years before March 11, 1895, Edwin Lines was a retail dealer of boots, shoes, and rubbers at Canandaigua, N. Y. It is alleged in the complaint that about October 30, 1894, said Lines represented to R. G. Dun & Co., a mercantile agency, through Arthur E. Seales, their agent, that his stock of goods would inventory from $4,000 to $5,000; that he had in accounts about $3,000; that he owned a dwelling worth $4,000, which was incumbered in the sum of $1,800; that a few hundred dollars would cover all of his indebtedness, including the mortgage on the dwelling; and that he was worth more than $5,000,—which statement R. G. Dun & Co. entered in their books. It is further alleged that February 15, 1895, Edwin Lines ordered of the plaintiffs 12 cases of boots and shoes, worth $150.60, for which he agreed to pay $150.60 August 1, 1895; and, if he elected to pay this sum within 30 days, 5 per cent. was to be deducted from the purchase price. It is further alleged that upon the receipt of this order the plaintiffs applied to R. G. Dun & Co. for information in respect to the financial condition of Lines, which agency furnished them with a copy of the statement made by Lines to Arthur E. Seales, on which

the plaintiffs relied, and February 28, 1895, shipped the goods so ordered to Lines. It is further alleged that, 11 days thereafter, Lines made a general assignment for the benefit of his creditors to the defendant, who by virtue thereof received all of the shoes, excepting two pairs. It is also alleged that Lines purchased the goods by means of false and fraudulent representations, with intent to defraud the plaintiffs; that Lines was insolvent in October, 1894, when he made the statement to R. G. Dun & Co., and when he purchased the goods; and, in effect, that the goods were purchased by Lines with the preconceived design not to pay for them. The defendant admits in his answer that he came into possession of the boots and shoes as assignee for the benefit of creditors; that they were worth $148.80, which is the value of the goods as alleged in the complaint.

On the trial the plaintiffs called Arthur E. Seales, who testified that he was a traveling reporter for R. G. Dun & Co., and that on the 28th of October, 1894, he called on Edwin Lines, at his place of business. The counsel for the plaintiffs then offered to show by the witness that Lines made to him the statement in respect to his financial condition which is set forth in the complaint, which was reduced to writing and forwarded to R. G. Dun & Co., who furnished a copy thereof to the plaintiffs. The defendant objected to this evidence as incompetent and immaterial, as forming no part of the transaction, and that statements made by Lines four months before the purchase of the goods could not be received to impeach the defendant's title. These objections were sustained, and the plaintiffs excepted. This ruling was error, for which a new trial must be granted. It is well settled in this state that if a dealer makes false and fraudulent representations in respect to his property to a mercantile agency, for the purpose of establishing his credit, and those statements become known to, and are relied on by, persons extending credit, the representations have the same effect as though made directly by the dealer to the person of whom a purchase is made. Eaton, Cole & Burnham Co. v. Avery, 83 N. Y. 31; Macullar v. McKinley, 99 N. Y. 353, 2 N. E. 9; Bliss v. Sickles (Sup.) 21 N. Y. Supp. 273, affirmed 142 N. Y. 647, 36 N. E. 1064; Cutlery Co. v. Babcock, 22 Hun, 481; Goodwin v. Goldsmith, 49 N. Y. Super. Ct. R. 101; Cantor v. Claflin (Sup.) 12 N. Y. Supp. 759; Claflin v. Flack (Com. Pl.) 13 N. Y. Supp. 269; Kelly v. Gould (Sup.) 19 N. Y. Supp. 349. The learned counsel for the defendant cites many cases to the effect that the declarations of the vendor of goods are not competent to impeach the title of his purchaser in good faith. The rule declared in these cases has no application to the case at bar; the defendant being an assignee for the benefit of creditors, and standing in the shoes of his assignor. Nor is there any force in the objection that these representations were made three months and a half prior to the date of the sale of the goods by the plaintiffs to Lines. In Bliss v. Sickles, supra, the defendants made statements to a mercantile agency in December, 1888, and in May and August, 1889, which the plaintiff relied on in making sales between January 11 and April

26, 1890; and it was held that these statements were continuing ones, on which the plaintiff had the right to rely, and, if fraudulent, that the sales could be rescinded and the goods recovered. In Cutlery Co. v. Babcock, supra, the purchaser made false representations to a commercial agency in respect to his financial ability on the 31st of December, 1875, upon which the plaintiff relied in making sales of goods on and after May 31, 1876; and it was held that, the statements having been found to be false and fraudulent, the vendor might rescind the sales and recover the goods.

The plaintiffs' exceptions are sustained, the verdict set aside, and their motion for a new trial is granted, with costs to abide the event. All concur.