part in assisting his friend would insure him a new customer, and enable him to extend the trade of his own house into new territory. It was good business policy for him to encourage Reiter by voluntarily offering to pay his traveling expenses if he should for any reason become unwilling to furnish the backing which he had promised to Clark. It appears that Clark did not inform Reiter candidly that Lake had declined to become a partner, but in a letter written several days before the first money had been obtained from Lake he did say to Reiter that:

"The firm name will be Clark & Reiter. Our capital will be $8,000.00. Lake is carrying me for the balance of the stock. I am pledging him my credit. * * * I think you will be satisfied with the deal when I talk it over with you."

This was at least a plain notice to Mr. Reiter that the plan of a partnership first proposed had not been carried into effect, and that Lake had become a creditor of Clark. It is true that there are circumstances which harmonize with the theory of the referee's decision; but these circumstances are not conclusive, nor sufficient to overcome the positive testimony of Lake and Clark, corroborated, as I have indicated, by Reiter. The fact which I consider most prejudicial to Mr. Lake's case is his failure to respond to an inquiry by a wholesale establishment with which he was dealing as to whether he was a silent partner in the business with Mr. Clark. The same circumstance, however, would be equally strong against Mr. Lake if he were now claiming the rights of a partner and such claim was being contested.

The evidence is insufficient to justify a finding that Mr. Lake was a partner with Clark at or previous to the time of his becoming bankrupt, and, on the other hand, it is sufficient to prove clearly that the claim which Mr. Lake makes as a creditor in its entirety, and every item, is valid and just. The court directs that an order be entered reversing the decision of the referee. and allowing the claim. The costs of the proceedings will be paid out of the funds in the hands of the trustee.

---

### In re WEIL.

#### (District Court, S. D. New York. November 30, 1901.)

BANKRUPTCY—GOODS OBTAINED BY FALSE REPRESENTATIONS—RIGHT OF SELLER TO RECLAIM.

A merchant ordered goods from Paris, which were shipped to him on credit, in reliance on the report of a mercantile agency, based on a statement made by the purchaser which was false and misleading. The goods were received shortly before the purchaser's bankruptcy, and he refused to receive the same, and attempted to return them. *Held*, that the sellers were entitled to rescind the sale for fraud, and recover the goods or their proceeds from the trustee of the bankrupt, and that such right, under the circumstances shown, was not lost by the fact that they had not consented to the return of the goods when offered.

In Bankruptcy. On motion to confirm report of referee.

Myers, Goldsmith & Bronner, for trustee.

Horwitz & Samuels, for petitioners.

111 F.—57

ADAMS, District Judge. An involuntary petition was filed against David Weil on the 14th day of September, 1900, and on the 23d day of October, 1900, he was adjudicated a bankrupt. Pending the adjudication, a receiver was appointed, who, among other things, took possession of certain raw silk and taffeta silk, which were sold by order of the court, and the proceeds are now in the possession of the trustee. Before these goods were sold, Schuster Fils et Cie., of Paris, France, filed petitions claiming the goods upon the allegations that they had been sold to the bankrupt upon false representations made by him; also that the bankrupt had refused to receive them, and the title still remained in the vendors. The claims were denied by the trustee and the issues arising out of the claims were referred to the referee in the case to take testimony and report the same, with his opinion. Such report is now before me on a motion on behalf of the trustee for confirmation. The learned referee was of the opinion that upon the testimony before him the title was in the bankrupt, and that the claims of the petitioners should be denied. There is no conflict in the evidence, none having been offered on behalf of the trustee. As I read it, the following facts appear: The bankrupt was never in direct communication with the petitioners, but in 1899 his son, who was then in his employ, and authorized to purchase goods for him, visited Paris, and bought some goods from them, after making representations which, if believed, would justify a considerable credit. At this time inquiries concerning the bankrupt were also made by the petitioners of Dun's Mercantile Agency, and satisfactory reports were received. These goods, amounting to about $2,000, were paid for, but the line of credit was not exhausted. In May, 1900, the goods in controversy were sold to Weil through the agency of the son, then upon another visit to Paris, partly upon the credit already established, and partly upon new reports from Dun's Agency, which they received from their New York agent in March, 1900. These goods were shipped in July and August, 1900. The March reports were based upon a statement made by Weil on the 7th of March, 1900. In this statement he showed assets amounting to $221,141.13 and liabilities amounting to $72,195.50. Taking the subsequent bankruptcy into consideration, the statement must have been grossly untrue, or there must have been a rapid disappearance of assets. An examination of his books showed its untruth in some particulars, and I am satisfied that it was false and misleading. If the vendors relied upon the statements,—and there is sufficient evidence to establish such fact,—it would seem that the misrepresentations were sufficient to entitle them to rescind the sale and claim a return of the goods. Turner v. Ward, 154 U. S. 618, 14 Sup. Ct. 1179, 23 L. Ed. 391; In re Gany (D. C.) 103 Fed. 930; In re Epstein (D. C.) 109 Fed. 874, 876; Humphrey v. Smith, 7 App. Div. 442, 39 N. Y. Supp. 1055; Bradley v. Bank, 46 App. Div. 550, 62 N. Y. Supp. 51.

Other features of the case are that Weil refused to receive a portion of the goods in question on the ground that they were not according to order, and endeavored to return the other portion,

recognizing that he was not entitled to retain them in view of his condition. This refusal to receive and attempt to return were shortly before an assignment which he had made for the benefit of his creditors, prior to the bankruptcy proceedings. It is claimed by the trustee that the refusal and return were ineffective, because not consented to by the petitioners; but I do not think, in view of the nature of the transactions, that such consent was necessary to establish their present rights.

It follows that the motion to confirm must be denied, and a reference had to determine the amount of the petitioners' recovery.

---

## UNITED STATES v. CHUN HOY.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1901.)

### No. 687.

1. CHINESE EXCLUSION—PROCEEDINGS FOR DEPORTATION—BURDEN OF PROOF.
   The provision of section 3 of the Chinese exclusion act of May 5, 1892 (27 Stat. 25), placing the burden of proof upon a Chinese person or person of Chinese descent, arrested under the provisions of the act, to establish his right to remain in the United States, is within the power of congress, and valid, and, unless such right affirmatively appears from the evidence, it is the duty of the court to order the defendant deported.

2. SAME—CLAIM OF NATIVITY—EVIDENCE CONSIDERED.
   Evidence *held* insufficient to sustain the claim of a person of the Chinese race, arrested for being unlawfully within the territory of Hawaii, that he was a native of such islands.[1]

Appeal from the District Court of the United States for the Territory of Hawaii.

Lorrin Andrews, F. H. Gould, and Samuel F. Chillingworth, for appellant.

Marshall B. Woodworth, for the United States.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. This is an appeal from a judgment of the district court of the United States for the territory of Hawaii, directing the deportation of the appellant, Chun Hoy, back to China, from which country he was permitted to land in Hawaii in August, 1900, by the collector of customs for that territory. Shortly thereafter a criminal information, duly verified, was filed against Hoy, charging him with being unlawfully in the United States, upon which the judge of the court below directed that he be apprehended and brought before him, pursuant to the provisions of an act of congress entitled "An act to prohibit the coming of Chinese persons into the United States," approved May 5, 1892 (27 Stat. [1891, 1892] 25). The defendant appeared with counsel, and the trial resulted in the judgment from which the appeal is taken. The contention on his

---

[1] Citizenship of Chinese, see notes to Gee Fook Sing v. U. S., 1 C. C. A. 212; Lee Sing Far v. U. S., 5 C. C. A. 332.