36 N. Y. 200-Followed, 83 N. Y. 34.

## Richard P. Bruff, Executor, v. Hippolite Mali and Otis P. Jewett.

In an action against the officers of an incorporated company, for selling to plaintiff certificates of stock, representing stock which had been fraudulently overissued by them, to entitle the plaintiff to recover, he must prove, to the satisfaction of the jury, that the certificates purchased by him did not represent genuine stock.

Where the plaintiff had proved that the whole amount of stock which the company were authorized to issue, had been issued prior to the issuing of his certificates, the burden of proof is thrown upon defendants, to show definitely that the certificates sold to plaintiff represented genuine stock.

The officers of the company issuing such false certificates, are liable therefor to the assignees of said certificates, when they have been purchased and held in *good faith.*

Bookes, J. This action was brought by Shotwell, since deceased, and is now prosecuted by his executor, who has been substituted as plaintiff in the cause. A recovery was had against Mali and Jewett, former president and vice-president of the Parker Vein Coal Company, a corporation created by the laws of Maryland, having its principal place of business in New York.

The complaint contained three separate counts or causes of action. In the first, after an averment that the plaintiff was a stockholder, it was charged that the defendants misconducted in their office of president and vice president, and wrongfully and fraudulently overissued the stock of the company, by reason of which the plaintiff's stock was rendered unsaleable and valueless. In the second, it was charged that the defendants made false and fraudulent representations in regard to the financial affairs of the company, whereby the plaintiff was induced to purchase stock of the company, which, in fact, was valueless. In the third, it was averred that the defendants, as officers of the company, and after the whole amount of the capital stock had been issued, made and issued other certificates purporting to be genuine certificates of shares of the capital stock of the company,

which were false and fraudulent; and sold and disposed of the same as true and genuine stock, four hundred and eighty shares of which the plaintiff purchased and received as genuine, to his great damage. On the trial, the judge held and decided that the plaintiff was not entitled to recover on either the first or second count of the complaint. Whether he was right or wrong in this ruling is not before us for decision, inasmuch as the plaintiff did not appeal. The recovery was under the third count, and the questions pre-. sented to this court for examination arise under the appeal by the defendants from the judgment having its basis on that count.

It may be well to examine the case in the order in which the questions arose on the trial. It was not disputed that the defendants, Mali and Jewett, were officers of the company. Both were directors; the former its president, and the latter its vice-president. Nor was it controverted before the court on the trial, that after the whole capital stock of the company was filled and certificates for the entire amount issued, the defendants, without authority, continued to make further and overissues to an enormous and ruinous amount. It was proved, or there was evidence ter.ding to prove, that fraudulent or overissues were made prior to the time when the plaintiff made his purchases, and prior to the date of the certificates of stock issued to him—in small numbers at first, and afterward freely — and that the overissues were made by the defendants deliberately from time to time, as inducements were suggested. The authorized capital stock was $3,000,000. The spurious stock from overissues exceeded $12,000,000. Under this state of facts the plaintiff rested the case, and the defendants moved for a dismissal of the complaint. The judge remarked, in substance, that if it appeared from the evidence that the plaintiff's certificates of stock were issued after the stock was full and overissues had commenced, and that in the absence of evidence that the certificates were given on the surrender of stock, it was for the jury to say whether they were genuine; and he denied the motion. This ruling was manifestly correct. The genuine certificates were

all out before those obtained by the plaintiff were issued. There was no proof then that any of the genuine certificates had been surrendered and new ones issued in their place. It might well be that there had been, but there was no proof of it in the case. There was only a suspicion growing out of a probability, because the stock, or what purported to be stock of the company, had been in the market.

Thereupon evidence was given by the defendants to the effect that from a time prior to the purchase by the plaintiff of his stock, there were surrenders and transfers of certificates, to a very great extent daily, at the office of the company; but the witness was unable to say whether such surrenders and transfers were of the genuine or spurious stocks, at least he did not identify a single transaction of the kind where the stock was issued prior to the issuing of the spurious certificates, and, in regard to the certificates held by the plaintiff, he said it was impossible for him to say whether they were issued on the sale of stock for cash, or whether they were issued on the surrender of other certificates; that it would be a mere presumption for him to state. The judge was then requested to hold and to instruct the jury that there was not sufficient evidence to warrant a finding that the stock in question was not genuine, which he declined to do. This decision was also correct. It was very doubtful whether the case was materially changed from what it was when the plaintiff rested. Did the evidence given by the defendants clearly and indisputably establish the fact that the plaintiff's certificates were genuine, or were issued on a surrender or transfer of genuine stock? Certainly not; and, if not, then the question still remained for the jury, and it would have been error to have instructed them as requested. Even if the case had been changed by the defendants' evidence, unless made entirely certain in their favor, it would still remain for the jury to say what effect should be given to the evidence, especially if it was, to a considerable degree, a matter of opinion or reasoning; and, also, to what extent a change had been effected by the proof. All that the defendants could rightfully claim, as regards this point, was that the judge

should charge as he did do; that, to entitle the plaintiff to recover, he was bound to prove, to the satisfaction of the jury, that the certificates bought by him did not represent genuine stock, or any part of the stock of the company, but constituted part of the overissue, not authorized by its charter. There was evidence before the jury bearing strongly on this question. The entire stock of the company had been taken, and certificates therefor issued, after which, and prior to the purchases by the plaintiff, the defendants had commenced their system of false issues. The plaintiff's certificates certainly belonged to the class of spurious issues, unless genuine ones had been surrendered and new ones sent out in their place. The burden was on them to remove the inference deducible from these facts, and which they could have done by showing that the plaintiff's certificates were issued on the surrender, or on the transfer of genuine stock. This might be difficult, but, if so, or even if actually impossible, the defendants should not be heard to complain, when their own admitted culpability creates the dilemma.

No error occurred in the admission or rejection of evidence. None was admitted against objection bearing on the question submitted to the jury. Nor was any excluded to which the defendants were entitled. They were allowed to prove that the plaintiff voted, or authorized some one to vote on his stock, as some evidence bearing on the question of its genuineness. But the offer to show that the directors of the Parker Vein Coal Company, with the consent of the plaintiff, transferred the property of the company to the American Coal Company, and accepted the stock of the latter in exchange for the stock of the former, and that the plaintiff took stock in the latter under this arrangement was properly rejected. Those facts had no tendency to prove that the plaintiff's certificates represented the genuine stock of the original company. How he disposed of the stock did not prove it genuine or otherwise. This was a matter with which the defendants had no concern. Their liability was complete, if liable at all, at the time of the purchase by the plaintiff.

The case, having been properly sent to the jury, and the jury having found in favor of the plaintiff, must now be further examined on the hypothesis that the plaintiff's certificates did not represent the genuine stock of the company, but were spurious. In this view the defendants asked the judge to charge the jury as matter of law, that even if spurious, there was no evidence that the certificates in question were purchased from the defendants, or from the Parker Vein Coal Company, and that if not purchased from either, then they were not liable in this action. These requests and the refusal of the judge so to hold and charge, present the only remaining question of importance pressed on our consideration. The learned judge instructed the jury on this point as follows: "That there was no evidence that the certificates were purchased from either the defendants or the company; but that it was unnecessary for the plaintiff to prove that he purchased from either, that if the defendants issued the stock, and the plaintiff purchased it on the faith that it was genuine, authenticated as it was, the defendants were liable, although the actual purchase was made of others." It is undoubtedly true, that a vendor of property guilty of a fraud on its sale, or who sells with warranty, is liable only to his vendee. A subsequent purchaser acquires no right of action therefor. As was well stated by the court below, there is in such case no privity between the vendor and such subsequent purchaser. But is such this case? Let us see clearly what facts must be deemed established by the verdict of the jury.

The verdict is general for the plaintiff, and every intendment is in favor both of its correctness and completeness to sustain the recovery. The jury have found that the certificates of stock purchased by the plaintiff were spurious; that the defendants issued or caused them to be issued with a fraudulent purpose, and that the plaintiff purchased them in good faith, supposing them to be genuine; that is, supposing them truly to represent a part of the capital stock of the company; that they could not be enforced or employed as stock; in other words, that they gave the purchaser no rights

as stockholders, is decided in *New York & New Haven R. R. Co.*, v. *Schuyler* (34 N. Y., 30). These false certificates were sent forth by the defendants, were thrown on the market by them as was said in the case cited, " with a view to well known and established commercial usages." They authenticated them, falsely and fraudulently attested them as genuine. They bore on their face such false attestation, which was equivalent to an assertion on their part to all persons who should purchase or to whom they should be offered, that they were genuine. In this way they invited confidence and induced trade. These acts were done with intent to defraud any and all purchasers, well knowing that every person to whose hands these false certificates should come by fair purchase might be injured. Therefore, having authenticated and issued these certificates for the purpose of defrauding, the defendants should be held liable to any one sustaining damage by purchasing on the faith of their genuineness. In this view, the defendants are to be considered as acting directly upon and influencing the purchaser; and, of course, liable, as every tort-feasor is, for the damages occasioned by their wrongful act. It was held, in the *New York & New Haven R. R.* case above cited, that every *bona fide* holder of spurious certificates (issued as were those of the plaintiff here) had a right of action against the company for negligence, in permitting its officer and agent to perpetrate a systematic course of fraud, like that proved in this case. It mattered not how many transfers had been made. If the certificates had their origin in the fraudulent or over-issues, they were void, and the *bona fide* holder had his claim against the company for damages occasioned by the fraudulent act of its agent, and, in such case, a joint action will lie against principal and agent (*Phelps* v. *Wait*, 30 N. Y., 78); or a separate action against either. (*Suydam* v. *Moore & Losee*, 8 Barb., 358.) The wrongful act is the servant's, in fact, and the principal's by construction. So, the rule which held the company liable, in the *New York & New Haven R. R.* case, to *bona fide* holders of the spurious certificates, would certainly have held Schuyler, the agent who perpetrated the

fraud, also liable. It was also decided in this case that, to entitle a party holding spurious certificates to sue, no privity was necessary except such as was created by the unlawful act and the consequential injury. (See also. *Gerhard* v. *Bates*, 20 Eng. L. & Eq., 129.) In *Thomas* v. *Winchester* (6 N. Y., 397), the action was for negligence, charging the defendant with carelessness in labeling a deadly poison as a harmless medicine, and sending it so labeled into market. The poison was sold by the defendant to Aspinwall, and by Aspinwall to Foord, and by the latter to Thomas, the plaintiff, who administered it to his wife. The objection was taken that the action could not be sustained, as the defendant was a remote vendor of the article; and there was no connection, transaction or privity between him and the plaintiffs, or either of them. The objection was not sustained, and it was held that the defendant was liable for improperly and negligently labeling the poison as a harmless medicine, and sending it forth into market so labeled. The defendant would have been none the less liable if the illegal act had been intentioned and willful instead of negligent merely. It necessarily follows from the doctrine established by the above cases, that the defendants having issued the false certificates of stock authenticated by them as genuine, and cast them upon the market with fraudulent intent, are liable to every holder to whose hands they may come by fair purchase. The learned judge was right, therefore, in refusing to charge as requested. We are cited to the case of *Seizer* v. *Mali* (32 Barb., 76), as an authority against the theory adopted by the judge at the circuit. It will be seen, however, from the views above expressed, that the principles recognized in *Seizer* v. *Mali*, are not here at all impugned. But we are of the opinion that they were not there well applied. The same question was discussed in *Cazeaux* v. *Mali* (25 Barb., 578), by Mr. Justice MITCHELL, whose views and conclusions are approved.

The judgment should be affirmed.

All concurred in the above opinion except HUNT, J., who dissented, and PORTER, J., who expressed no opinion.

Judgment affirmed.