THE EATON, COLE & BURNHAM COMPANY, Respondent, *v.* ROBERT AVERY, Appellant.

Where a member of a firm makes to a mercantile agency statements known by him to be false, as to the capital invested in the firm business, with the intent that the statements shall be communicated to persons interested in ascertaining the pecuniary responsibility of the firm, designing thus to procure credits and to defraud such persons; and such statements are communicated to one who in reliance thereon sells goods to the firm upon credit, an action for deceit is maintainable at the suit of the vendor, against the partner making such false representations.

*It seems* that the court will take judicial notice of the nature of the business and the office of mercantile agencies.

A person furnishing information to such an agency as to his means and pecuniary responsibility is to be presumed to have done so to enable the agency to communicate the information to persons interested, for their guidance in giving credit to him.

In such an action plaintiff's evidence was to the effect that a person employed by the mercantile agency applied to defendant for a statement of the means of his firm, to be reported to the agency, informing him of the object of his visit; that defendant stated the capital of the firm to be $20,000 chiefly contributed by him, in money, and gave further particulars. The employe reduced the statement to writing and afterward transcribed it on the books of the agency. Defendant subsequently applied to E., plaintiff's president, to sell his firm goods on credit. E., before making the sale, sent to the office of the agency for information as to the responsibility of the firm and received an answer in writing which gave the substance of defendant's statements. This E. examined, and he relied entirely on the report in making the sale. After the failure of defendant to pay, E. exhibited to him the statement, he admitted the making of the representations therein. Defendant did not in fact contribute any capital either in money or property; the other partner contributed tools

valued at $4,000, of which E. agreed to pay half but did not.   E., about the time he made the statement, advised his partner that he was going to the agency to put this property in the name and to the credit of the firm, and afterward stated to him that he had valued the firm at $25,000. *Held,* that the evidence justified a refusal to nonsuit ; that it authorized a finding that the alleged false statement as to capital was made to give the firm a credit it was not entitled to and with intent to defraud any person who might inquire of the agency.

The commercial agency in its answer added to the statement as to what defendant had represented a caution to the effect that it did not confirm it, that the claims of the firm for credit were not yet established, and that " small amounts should rule, though so far have paid as agreed." *Held,* that it was for the jury to determine, and defendant was entitled to have them instructed, that they might take into consideration whether the representations were such as were calculated under the circumstances to deceive a prudent man.

(Submitted October 14, 1880 ; decided November 30, 1880.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiff entered upon a verdict.   The decision of the General Term was made February 13, 1879.   (Reported below, 18 Hun, 44.)

The nature of the action and the facts are set forth sufficiently in the opinion.

*John H. Bergen* for appellant.   Plaintiff cannot recover where the facts and circumstances are such that they ought to have excited suspicion and led to inquiry.   ( *Williams* v. *Brown,* 15 N. Y. 351 ; *Heulich* v. *Brennan,* 11 Hun, 194.) Plaintiff could not maintain this action even if it had given credit, relying on the report.   (Cooley on Torts, pp. 476, 487, 493, 496 ; *Long* v. *Warren,* 68 N. Y. 426 ; *Peck* v. *Gurney,* 8 Moak's Eng. Rep. 1 ; *Barry* v. *Croskey,* 2 J. & H. 117, 118, 123 : *Langridge* v. *Levy.* 4 M. & W. 337.\

*John L. Hill* for respondent.   Defendant was properly held for fraud if he materially misrepresented the financial ability of his firm through the commercial agency, for the purpose of obtaining, and thereby actually obtained the plaintiff's goods on

credit. (25 Barb. 583; *Cazeaux* v. *Mali*, id. 578; 31 id. 129; *Newbury* v. *Garland*, id. 121; *Bruff* v. *Mali*, 36 N. Y. 200; *Morgan* v. *Skiddy*, 62 id. 319; *Westcott* v. *Ainsworth*, 9 Hun, 53.)

RAPALLO, J. This is an action for deceit, in obtaining the sale and delivery of goods to the firm of Avery & Riggins, by means of false representations made by the defendant as to the pecuniary condition of his firm. The representations charged were not made directly by the defendant to the plaintiff, but are alleged to have been made by him to a mercantile agency (Dun, Barlow & Co.), or its agent, and by it communicated to the plaintiff, who claims that it delivered the goods to Avery & Riggins on credit, on the faith of such representations. The counsel for the defendant contends that the plaintiff cannot maintain an action against the defendant for false representations made by him to Dun, Barlow & Co., or its agent, and that such representations, assuming them to have been made, are not sufficiently connected with the dealing between the defendant and the plaintiff to enable the latter to recover by reason thereof. On this point we are of opinion that the law was correctly stated by the learned judge before whom the trial was had, in his charge to the jury, wherein he instructed them that if the defendant, when he was called upon by the agent of Dun, Barlow & Co., made the statements alleged in the complaint as to the capital of the firm of Avery & Riggins, and they were false, and so known to be by the defendant, and were made with the intent that they should be communicated to and believed by persons interested in ascertaining the pecuniary responsibility of the firm, and with intent to procure credit and defraud such persons thereby, and such statements were communicated to the plaintiff and relied upon by it, and the alleged sale was procured thereby, the plaintiff was entitled to recover. The rule thus laid down accords with the principle of adjudications in analogous cases, in which it has been held that it is not essential that a representation should be addressed directly to the party who seeks a

remedy for having been deceived and defrauded by means thereof. (*Cazeaux* v. *Mali*, 25 Barb. 578; *Newbery* v. *Garland*, 31 id. 121; *Bruff* v. *Mali*, 36 N. Y. 200; *Morgan* v. *Skiddy*, 62 id. 319; *Commonwealth* v. *Call*, 21 Pick. 515, 523; *Commonwealth* v. *Harley*, 7 Metc. 462.) The principle of these cases is peculiarly applicable to the case of statements made to mercantile agencies. Proof was given on the trial as to the business and office of these agencies, but they are so well known, and have been so often the subject of discussion in adjudicated cases, that the courts can take judicial notice of them. Their business is to collect information as to the circumstances, standing and pecuniary ability of merchants and dealers throughout the country, and keep accounts thereof, so that the subscribers to the agency when applied to by a customer to sell goods to him on credit, may by resorting to the agency or to the lists which it publishes, ascertain the standing and responsibility of the customer to whom it is proposed to extend credit. A person furnishing information to such an agency in relation to his own circumstances, means and pecuniary responsibility, can have no other motive in so doing than to enable the agency to communicate such information to persons who may be interested in obtaining it, for their guidance in giving credit to the party; and if a merchant furnishes to such an agency a willfully false statement of his circumstances or pecuniary ability, with intent to obtain a standing and credit to which he knows that he is not justly entitled, and thus to defraud whoever may resort to the agency, and in reliance upon the false information there lodged, extend a credit to him, there is no reason why his liability to any party defrauded by those means should not be the same as if he had made the false representation directly to the party injured.

The counsel for the appellant is undoubtedly right in his general proposition that a false representation made to one person cannot give a right of action to another to whom it may be communicated, and who acts in reliance upon its truth. If A. casually or from vanity makes a false or exaggerated statement of his pecuniary means to B. or even if he does so with

intent to deceive and defraud B. and B. communicates the statement to C. who acts upon it, A. cannot be held as for a false representation to C. But if A. makes the statement to B. for the purpose of being communicated to C. or intending that it shall reach and influence him, he can be so held. In *Commonwealth* v. *Call* (21 Pick. 515), the court say on this point at page 523 that the representation was intended to reach P. and operate upon his mind ; that it did reach him, and produced the desired effect upon him, and that it was immaterial whether it passed through a direct or circuitous channel.

In *Commonwealth* v. *Harley* (7 Metc. 462), the prisoner was indicted for obtaining goods by false pretenses from G. B. & Co. The representations were made by one Cameron, in the absence of the prisoner Harley, to a clerk of G. B. & Co. who communicated them to a member of the firm. But there was evidence that they were made by Cameron with the approbation and direction of Harley, and these facts were held sufficient to sustain a conviction. Neither is it necessary that there should be an intent to defraud any particular person. Should A. make a false statement of his affairs to B. and then publicly hold out B. as his reference, can it be doubted that he would be bound by the communication of his statement by B. to any person who might inquire of him in consequence of this reference ? That case differs from the present one only in the fact that here there was no express invitation to the public to call upon Dun, Barlow & Co. for information. But the defendant knew that they were a mercantile agency whose business it was to give information as to the standing and means of dealers, and that it was resorted to by merchants to obtain such information. By making a statement of the financial condition of his firm to such an agency he virtually instructed it what to say if inquired of. Can it make any difference whether he spontaneously went to the agency to furnish the information or whether he gave it on their application ? He must have known that the object of the inquiry was not to satisfy mere curiosity, but to enable the

agency to give information upon which persons applying for it might act, in dealing with the defendant's firm.

The case is a new one in its facts, but the principles by which it should be governed are well established.

The further question arises on this appeal, whether there was sufficient evidence to justify the submission of the case to the jury under the rule of law which has been stated, or whether the motion for a nonsuit should be granted. In considering this question we must lay out of view the evidence on the part of the defendant, which is contradictory of that on the part of the plaintiff, but which is largely relied upon in the statement of the case in the points of the appellant, and we must put the most favorable construction upon the plaintiff's evidence. The evidence on the part of the plaintiff is in substance as follows: An employee of Dun, Barlow & Co., a mercantile agency, testified that in August, 1875, he applied to the defendant for a statement of the means of defendant's firm, to be reported to Dun, Barlow & Co.; that he presented to defendant the card of Dun, Barlow & Co., and informed him of the object of his visit, and the defendant professed himself pleased to give all the information pertaining to his business which Dun, Barlow & Co. required; that he then stated that the capital of the firm was $20,000, chiefly furnished by himself, and that the capital so contributed by him was in money, and then went on to give further particulars. The employee reduced the statement to writing, and afterward transcribed it in the books of Dun, Barlow & Co. Mr. Eaton, the president of the plaintiff, testified that in September, 1875, the defendant applied to him to sell to his firm some goods on a credit of thirty days; that before making the sale and while the matter was under advisement, he (Eaton) sent to the office of Dun, Barlow & Co. for information as to the responsibility of Avery & Riggins, and they sent him an answer in writing, which, after he had examined it, he put in his record book. This paper the witness produced at the trial, and he testified that in the following February, after the defendant had failed to pay for the goods, he, the witness, read to the defendant the identical

report which he had received from Dun, Barlow & Co as above stated, and asked him if it was correct, and the defendant replied that the agent of Dun, Barlow & Co. had called upon him, and that the statement of Dun, Barlow & Co. was as he had given it to the agent. This statement contained the following among other particulars: "A." (Avery)   *   *   *   * "claims so have $20,000 in the business, all his means, and furnished by him." Eaton testified that he received this statement or report about the 1st of September, and that the principal item of goods was sold on the 14th of September. He personally negotiated the sale. That the order was talked over some time previous to its being given, and during that time he got Dun, Barlow & Co.'s report. He also testified that he relied entirely upon that report; that after the sale and before the delivery of the goods, the treasurer of the company, Mr. Cole, demurred to the sale, fearing that Avery & Riggins were not responsible, but the witness produced Dun, Barlow & Co.'s report, and Cole admitted that under such a statement they could not consistently refuse them the credit.

This evidence is substantially corroborated by Mr. Cole. The sale and delivery of the goods was shown, and only a portion of the price was ever paid, and Avery & Riggins went into bankruptcy early in the following year.

Riggins, the partner of the defendant, testified that the defendant did not contribute any capital to the firm of Avery & Riggins, either in money or property; but he, the witness, contributed about $6,000 worth of tools, which, when Avery came with him, he rated at $4,000, of which Avery was to pay $2,000, but that he had not paid it and the firm stopped business in February, 1876.

This witness further testified that in August, 1875, the defendant said to witness that he was going down to the commercial agency, and was there going to put this property in the name and to the credit of the concern. That he afterward came back, and said he had rated the firm at $25,000.

There is much more evidence in the case. Most of the inculpatory statements contained in the testimony on the part of

the plaintiff are denied by the defendant, and there are some discrepancies in the testimony on the part of the plaintiff. These were proper matters for the consideration of the jury, but they cannot affect the question of the propriety of granting the motion for a nonsuit. The evidence above quoted being in the case, it could not be withdrawn from the jury. The making of the representations, their falsity, and the defendant's knowledge of their falsity, and that the plaintiff relied upon them, were sufficiently proved, *prima facie*, if the plaintiff's witnesses were credited. It is also clear that the defendant, when making the statements, knew that they were to be used by a mercantile agency, and the testimony of Riggins, if credited, tends to show that the defendant understood the effect of the representations, and desired to have a high rating, and also tends to establish a fraudulent intent. The jury might legitimately draw the inference that the alleged false statement of the capital of the concern was made for the purpose of giving it a credit to which it was not entitled, and of defrauding any person who might inquire of the agency, or consult its lists. That he knew that these agencies issued such lists to merchants who paid for them, appears from his own testimony, and his denial of knowledge, of the purposes for which they were issued and consulted, was not conclusive. The jury was entitled to draw its own inferences on that subject from the circumstances, notwithstanding this denial.

For these reasons we think that the motion for a nonsuit was properly denied. There are numerous exceptions to rulings on questions of the admissibility of evidence, and we have examined them all; but, without going into detail, our conclusion is that no error was committed in this respect which would justify a reversal of the judgment. The most important exception in the case is to the refusal of the judge to charge as requested, " that the jury might take into consideration whether the report made to the plaintiff by Dun, Barlow & Co., coupled with conditions and distrust in such a way as it was, was such a statement as a prudent man would rely on." The conditions and distrust here referred to, are the statement

contained in the report received by the plaintiff from Dun, Barlow & Co., following their account of what Avery had represented to them, as follows: "We do not confirm his possession of so much means as he claims, though he has had opportunities to earn it. Claims to have contract for $25,000 worth of work at profitable rates. Their claims for credit are not yet established, and for the present small amounts should rule, though so far have paid as agreed;" and appended to the report was a general caution in these words: "The information given on this sheet, in answer to your inquiry, is, you will remember, communicated in the strictest confidence, to be used as a private memorandum for your guidance in your own business, and not to be communicated to any other person or persons.

"The actual verity of this or any other information obtained through the mercantile agency is in no manner guaranteed by the said agency or the proprietors thereof, for, notwithstanding every effort, mistakes and misapprehensions may occasionally occur."

These cautions related rather to the responsibility of Dun, Barlow & Co., for the accuracy of the information which they communicated, than to that of the defendant for the truthfulness of that which he lodged with them for the purposes of their agency. Still, we think that the defendant was entitled to have the jury instructed in some form, that they might take into consideration whether the report, such as it was, was calculated to mislead a prudent man. If a refusal so to charge had stood uncorrected a serious question would have been presented. The judge, in refusing the request, expressed his own opinion that the plaintiff had the right to rely upon the statement, but immediately afterward, on the concession of the plaintiff's counsel, the judge modified his refusal and charge, and submitted the question to the jury in such an unequivocal and clear manner that they could not have misapprehended it. He charged them that if they found upon all the evidence in the case that the statement that came to the plaintiff was not a statement that was likely to deceive a prudent person, they

should find for the defendant. The form of the request which was refused, if the case stood upon that, would be subject to criticism, and we think that the charge as made gave the defendant the full benefit of the point at which he was aiming.

The other exceptions have already been sufficiently covered; we find none which in our judgment should be sustained.

The judgment should be affirmed.

All concur.

Judgment affirmed.