# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 22, 2010          Decided February 26, 2010

No. 09-1139

FRED LEROY PASTERNACK,
PETITIONER

v.

NATIONAL TRANSPORTATION SAFETY BOARD AND FEDERAL
AVIATION ADMINISTRATION,
RESPONDENTS

On Petition for Review of an Order
of the National Transportation Safety Board

*Kathleen A. Yodice* argued the cause and filed the briefs for petitioner.

*James F. Conneely*, Attorney, Federal Aviation Administration, argued the cause and filed the brief for respondent. *Susan Caron*, Attorney, entered an appearance.

Before: GINSBURG, BROWN, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

2

KAVANAUGH, *Circuit Judge*: The Federal Aviation Administration revoked Fred Pasternack's airman certificates on the ground that Pasternack refused to take a mandatory drug test. The National Transportation Safety Board upheld the revocation order. Because a key finding on which the Board relied was not supported by substantial evidence, we grant the petition, vacate the Board's decision, and remand for further proceedings consistent with this opinion.

I

Dr. Fred Pasternack was a part-time pilot with Northeastern Aviation. In June 2007, Northeastern notified him that he had been randomly selected for drug testing; such random drug testing was required by Department of Transportation regulations. Pasternack reported to a LabCorp collection site but was unable to provide a sufficient quantity of urine for the test. This is not an uncommon occurrence, and for such situations, the Department has adopted "shy bladder" procedures. *See* 49 C.F.R. § 40.193. Under the regulations, Pasternack was required to remain at the collection site for three hours or until he provided a sufficient specimen. *See id.* The collector, Theresa Montalvo, told Pasternack to remain in the waiting room until he could provide another specimen. Pasternack apparently had a scheduled business-related meeting and told Montalvo he needed to leave the collection site. He left and returned a few hours later, at which time he provided a sample that tested negative for drugs. Pasternack claimed to have left the collection site with Montalvo's acquiescence after spending several minutes in the waiting room. *See* Transcript of NTSB Hearing at 424-26, *Adm'r v. Pasternack*, Docket No. SE-18133 (July 30-31, 2008) (Hearing Tr.) (J.A. 281-83). Montalvo, however, testified that Pasternack "rushed out of the facility" while she was attempting to explain the

collection procedures to him. *Id.* at 78 (J.A. 68). Although Montalvo herself apparently did not view Pasternack's departure as a refusal to take the test (given that she allowed him to take the test when he returned), a medical review officer concluded that Pasternack's failure to remain at the testing site meant that he had technically refused a drug test for purposes of the Department of Transportation regulation. *Id.* at 120 (J.A. 100); *see* 49 C.F.R. § 40.191(a)(2). The penalty for refusing to take a test is naturally harsh: The Federal Aviation Administration issued an emergency order revoking Pasternack's airline transport pilot and flight instructor certificate and his ground instructor certificate.

Pasternack appealed the FAA's order to the National Transportation Safety Board. The case was initially heard by an Administrative Law Judge, who affirmed the revocation order. The Board, in turn, affirmed the ALJ's decision. *See Adm'r v. Pasternack*, NTSB Order No. EA-5443 (Apr. 27, 2009) (J.A. 394).

As an initial matter, the Board observed that Pasternack's undisputed conduct – the fact he had "left the test site without providing an adequate urine sample and before the testing process had been completed" – qualified as a refusal under the plain language of § 40.191(a)(2). *Id.* at 11 (J.A. 404). The Board then considered Pasternack's "exculpatory justifications for his refusal," including his claim that no one told him leaving would constitute a refusal. *Id.* at 12 (J.A. 405). The Board rejected that claim, finding that the ALJ had made an "implicit . . . credibility determination" against Pasternack and that "the preponderance of the evidence . . . demonstrates that [Pasternack]'s own behavior at LabCorp precluded the LabCorp test administrator from explaining . . . that [Pasternack's] departure from the facility . . . would constitute a refusal." *Id.*

Pasternack petitioned this Court for review of the Board's decision pursuant to 49 U.S.C. § 1153. He contends, among other things, that the Board erred in finding that his conduct amounted to a refusal of a drug test.[1]

## II

We review NTSB decisions under the arbitrary and capricious standard and treat the Board's factual findings as "conclusive" if they are supported by substantial evidence. *See* 5 U.S.C. § 706(2)(A); 49 U.S.C. § 46110(c); *Garvey v. NTSB*, 190 F.3d 571, 577 (D.C. Cir. 1999). However, "we may uphold agency orders based only on reasoning that is fairly stated by the agency in the order under review." *Casino Airlines, Inc. v. NTSB*, 439 F.3d 715, 717 (D.C. Cir. 2006) (quoting *Williams Gas Processing–Gulf Coast Co. v. FERC*, 373 F.3d 1335, 1345 (D.C. Cir. 2004)); *see SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Therefore, "[i]f there is no substantial evidence to support the Board's reasoning . . . its order must be vacated." *Van Dyke v. NTSB*, 286 F.3d 594, 598 (D.C. Cir. 2002).

It is undisputed that Montalvo, the collector in this case, did not advise Pasternack that his departure from the testing facility would be deemed a refusal. *See* Hearing Tr. at 79 (J.A. 69).[2] According to Pasternack, if he had been told that

---

[1] Pasternack also contends that he was not eligible for random drug testing in June 2007 because he was "not current or qualified to perform as a pilot." Pasternack Br. at 3; *see* 14 C.F.R. § 120.105. Because we vacate the NTSB's decision on other grounds, we need not consider that argument.

[2] The Department of Transportation's Urine Specimen Collection Guidelines instructed collectors to give that warning. *See* OFFICE OF DRUG & ALCOHOL POLICY & COMPLIANCE, U.S.

his leaving would constitute a refusal, he "would have remained at the site." *Id.* at 442-43 (J.A. 292-93). Pasternack contended that the fact he was not told the consequences of his leaving for a few hours qualified as an "exculpatory justification" for his actions. The Board rejected that justification on the ground that Pasternack's "own behavior . . . precluded" Montalvo from telling him that his departure would constitute a refusal. The Board also invoked the ALJ's "implicit . . . credibility determination" against Pasternack and in favor of Montalvo. *Pasternack*, NTSB Order No. EA-5443, at 12 (J.A. 405).

In our view, the Board's reasoning on this point was not supported by substantial evidence. To be sure, we must respect "reasonable credibility determinations" of the ALJ that have been "expressly approved" by the Board. *Throckmorton v. NTSB*, 963 F.2d 441, 444 (D.C. Cir. 1992). In this case, however, the ALJ made no credibility determination – express or implied – with respect to Montalvo's assertion that she didn't have an opportunity to fully explain the "shy bladder" collection procedures to Pasternack before he left the facility. Hearing Tr. at 78 (J.A. 68). The ALJ's findings of fact simply did not address that factual issue.

---

DEP'T OF TRANSP., URINE SPECIMEN COLLECTION GUIDELINES 18, 20 (2006) ("when the employee does not provide a sufficient amount of urine," the collector "must specifically tell the employee that he or she is not permitted to leave the collection site and if they do so, that it will be considered a refusal to test"). Department of Transportation regulations provide that a "collector in the DOT drug testing program . . . must be knowledgeable about . . . the current 'DOT Urine Specimen Collection Procedures Guidelines.'" 49 C.F.R. § 40.33(a).

Moreover, even assuming the ALJ had made a credibility determination that Montalvo's testimony was entirely truthful and accurate, it still would not support the Board's conclusion that Montalvo was "precluded" from telling Pasternack the consequences of his leaving. On the contrary, even if Pasternack left the facility in a rushed manner, it is utterly implausible that Montalvo had no opportunity to tell Pasternack that his leaving would be deemed a refusal. At oral argument before this Court, the Government's counsel acknowledged that it would have taken no more than a few seconds for Montalvo to convey that crucial piece of information. *See* Tr. of Oral Arg. at 17-18. After all, how long would it have taken to say, "If you leave, that will constitute a refusal to test"? Moreover, Montalvo herself testified that after Pasternack said he needed to leave, she had an opportunity to tell him she would have to notify his employer, and that Pasternack heard and responded to that statement. *Id.* at 63-64 (J.A. 57-58).[3] Yet Montalvo did not take advantage of that opportunity to give Pasternack the far more important warning that his leaving would constitute a refusal. In light of Montalvo's own testimony, no substantial evidence supports the Board's conclusion that Pasternack's behavior "precluded" Montalvo from informing him that his leaving would be considered a refusal.

Because the Board expressly relied on its finding that Montalvo was "precluded" from warning Pasternack that his

---

[3] The Board stated, in summarizing the evidence, that in order to convey this information, Montalvo "called after" Pasternack "as [he] was leaving." *Pasternack*, NTSB Order No. EA-5443, at 6 (J.A. 399). Montalvo, however, did not testify that she had to "call after" Pasternack. *See* Hearing Tr. at 63-64 (J.A. 57-58) ("A. He grabbed his ID. And I told him I would have to notify the employer. Q. What was his response to that? A. He said, fine. Q. And what happened after that? A. He walked out.").

leaving would constitute a refusal and because that finding is not supported by substantial evidence, we must vacate the Board's decision.[4] In so doing, we do not purport to say that the Board was required to consider Pasternack's "exculpatory justification"; it may be that 49 C.F.R. § 40.191(a)(2) is a strict liability provision. But the Board having entertained Pasternack's "exculpatory justification," and having rejected it on a ground not supported by substantial evidence, we are constrained to vacate the Board's decision. *See Chenery*, 332 U.S. at 196.

\*   \*   \*

We grant Pasternack's petition, vacate the Board's decision, and remand to the Board for further proceedings consistent with this opinion.

*So ordered.*

---

[4] The FAA suggests that the Collection Guidelines may not have been binding on Montalvo because they did not appear in the regulations themselves. *See* FAA Br. at 40. The FAA also contends that because he had been trained as a medical review officer, Pasternack "should have been familiar with the requirement that an employee may not leave the collection site during a random drug test." *Id.* at 40 n.37. We cannot deny the petition on those grounds: Under "well-established *Chenery* principles," we cannot uphold the Board's decision on a basis not relied upon by the Board. *Chirino v. NTSB*, 849 F.2d 1525, 1532 n.10 (D.C. Cir. 1988).