Pasternack v. Laboratory Corporation

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term 2014

(Argued: June 2, 2015          Decided: November 17, 2015)

Docket No. 14-4101-cv

_____

DOCTOR FRED L. PASTERNACK,

*Plaintiff-Appellant,*

v.

LABORATORY CORPORATION OF AMERICA HOLDINGS, AKA LABCORP,
CHOICEPOINT, INC.,

*Defendants-Appellees.*[1]

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:

WESLEY, HALL, and CHIN, *Circuit Judges.*

_____

---

[1] The Clerk of Court is respectfully directed to amend the caption to conform with the above.

Appeal from a judgment of the United States District Court for the Southern District of New York (Gardephe, *J.*) dismissing plaintiff-appellant's claims against drug testing companies for purportedly mishandling a random drug test. We consider (1) whether under New York negligence law a drug testing company owes a duty of care to the subject of a drug test based on federal regulations governing drug testing, and (2) whether under New York law a fraud claim can be based on false representations made by a defendant to a third party whose reliance on the representations results in injury to the plaintiff.

DECISION RESERVED AND QUESTIONS CERTIFIED.

_____

CYNTHIA S. ARATO (Daniel J. O'Neill, *on the brief*), Shapiro, Arato & Isserles LLP, New York, New York, *for Plaintiff-Appellant*.

ROBERT I. STEINER (Sean R. Flanagan, *on the brief*), Kelley Drye & Warren, LLP, New York, New York, *for Defendant-Appellee Laboratory Corporation of America Holdings*.

FREDERICK T. SMITH, Seyfarth Shaw LLP, Atlanta, Georgia, *for Defendant-Appellee LexisNexis Occupational Health Solutions Inc. (formerly ChoicePoint, Inc.)*

_____

CHIN, *Circuit Judge*:

In this case, plaintiff-appellant Fred Pasternack, a physician and airplane pilot, was required to submit to a random drug test in accordance with federal regulations governing aviation safety. He contends that defendants-appellees Laboratory Corporation of America Holdings ("LabCorp") and ChoicePoint, Inc. ("ChoicePoint"), the drug testing companies engaged to administer the test, mishandled it.[2] He brought this action below, seeking damages for, *inter alia*, negligence and fraud. The district court (Gardephe, *J.*) entered judgment on September 30, 2014, dismissing the action. Pasternack appeals.

The appeal presents unresolved questions of New York law:

*First*, whether drug testing regulations and guidelines promulgated by the Federal Aviation Agency (the "FAA") and the Department of Transportation ("DOT") create a duty of care for drug testing laboratories and test program administrators under New York negligence law; and

---

[2] ChoicePoint was acquired by Reed Elsevier Inc. in 2008, and thereafter its drug testing services were taken over by a subsidiary of the latter. We continue to refer to the entity as ChoicePoint.

*Second*, whether a plaintiff may establish the reliance element of a fraud claim under New York law by showing that a third party relied on a defendant's false statements resulting in injury to the plaintiff.

Because these unresolved questions implicate significant New York state interests and are determinative of this appeal, we reserve decision and certify the questions to the New York Court of Appeals.

## STATEMENT OF THE CASE

### A.    *The Facts*

The facts alleged in Pasternack's complaints are assumed to be true.[3] They may be summarized as follows:

Doctor Fred Pasternack is a physician and part-time pilot for Northeastern Aviation Corporation ("Northeastern") and an aerial advertising business. Between 1978 and 2008, he was designated a Senior Aviation Medical Examiner ("AME") for the FAA, giving him the authority to conduct FAA-mandated medical examinations for pilots. He has a private medical practice in New York City, which includes performing AME certification examinations of other pilots. He holds a number of certificates issued by the FAA.

---

[3]    As discussed below, Pasternack's factual allegations are contained in an amended complaint and a second amended complaint.

The FAA has issued regulations requiring all aviation employees to submit to random drug testing, as part of its mandate to ensure "safety in air commerce and national security." 49 U.S.C. § 44701(a)(5) (procedures for transportation workplace drug and alcohol testing programs); *see also* 49 C.F.R. pt. 40. On June 1, 2007, Pasternack was notified by Northeastern that he had been selected for random drug testing. At that time, ChoicePoint was responsible for administering Northeastern's drug testing program, and LabCorp was responsible for performing specimen collection and testing.

On June 5, 2007, at approximately 1:10 p.m., Pasternack arrived at LabCorp's testing site in Manhattan, with a chain-of-custody form ("CCF"). He provided a urine sample, but Theresa Montalvo, a LabCorp worker, informed him that the sample contained an insufficient amount of urine for testing. Montalvo told Pasternack to wait in the waiting area. Pasternack did so, but because he had a 2:30 p.m. appointment to see a patient, he believed that he would not be able to produce enough urine before he had to leave for the appointment. Consequently, he advised Montalvo that he would have to leave and that he would return later to provide the sample. Montalvo asked him when he was planning to return, and she told him that she would have to advise his

employer that he was leaving the collection site. Pasternack told her she was free to tell his employer, and that he would come back the next morning. Montalvo did not tell Pasternack that if he left the collection site he would be designated a "refusal to test," and he claims that he did not know that leaving the test site could constitute a "refusal" to test. Pasternack contends that he would have waited at the site if Montalvo had told him this.

Pasternack left the testing site to meet his patient. Approximately three hours later, around 4:00 p.m., he returned. Montalvo told him that she would have to call his employer. She did so, calling the General Manager for Northeastern, who told her that LabCorp could take a second urine sample from Pasternack. She noted on Pasternack's CCF that he had left and returned, and that Northeastern had approved the second collection. Pasternack provided another urine sample; this time there was a sufficient quantity of urine. His specimen tested negative.

Pasternack's CCF was later reviewed by a Medical Review Officer (the "MRO") at ChoicePoint. Based on the notation on the CCF that Pasternack had left the testing site, the MRO determined that Pasternack had left the collection site before the test was completed. ChoicePoint then notifed the FAA

that Pasternack had refused a drug test. The MRO designated Pasternack as a "refusal to test" even though LabCorp had not checked the "no specimen provided" box on the CCF, and even though Northeastern had authorized Montalvo by phone to collect the second sample when Pasternack returned to the site later that day.

On June 15, 2007, Northeastern learned that Pasternack's June 5, 2007 drug test had been designated by ChoicePoint as a "refusal to test." Thereafter, the FAA conducted an investigation into Pasternack's purported refusal to test, during which Montalvo purportedly made false representations to the investigators about Pasternack's conduct. On November 20, 2007, in reliance on the misrepresentations, the FAA revoked all of Pasternack's airman certificates. By letter dated February 21, 2008, the FAA terminated his AME designation due to his "unacceptable lack of regard for the importance of" FAA regulations and for his "refusal to take a random drug test." J.A. at 56. As a consequence, Pasternack was unable to pilot any flights or perform pilot medical examinations or otherwise function as an AME.

**B.** *Prior Proceedings*

**1.** *The Licensing Proceedings*

Pasternack appealed the termination of his AME designation to the FAA, and the appeal was denied. He also appealed the FAA's revocation of his pilot certificates to an Administrative Law Judge ("ALJ") of the National Transportation Safety Board (the "NTSB"). The ALJ upheld the revocation. He then appealed to the NTSB, which also upheld the revocation.

Pasternack appealed the NTSB's decision to the D.C. Circuit Court of Appeals. On February 26, 2010, the D.C. Circuit remanded the matter to the NTSB, holding that the NTSB's finding that Pasternack had "refused" to test was not supported by substantial evidence. *Pasternack v. NTSB*, 596 F.3d 836, 838 (D.C. Cir. 2010). While it was undisputed that Montalvo did not advise Pasternack that he would be deemed a "refusal to test" if he left, the NTSB argued that Montalvo did not have an "opportunity" to explain the policy because of Pasternack's behavior at and hurried departure from the collection site. *Id.* at 837-40. The D.C. Circuit found, however, that it was "utterly implausible" that Montalvo did not have time to tell Pasternack that if he left it would be deemed a "refusal." *Id.* at 839.

- 8 -

On remand, the ALJ again held that Pasternack had refused to test. The NTSB again affirmed, and Pasternack again appealed to the D.C. Circuit. On March 22, 2013, the D.C. Circuit ruled in favor of Pasternack again, holding that "substantial evidence does not support the NTSB's determination that the collector did not impliedly give Dr. Pasternack permission to leave," and reversing the NTSB. *Pasternack v. Huerta*, 513 F. App'x 1, 2 (D.C. Cir. 2013). The FAA thereafter reinstated Pasternack's airman certificates and AME designation and expunged his record of any reference to a drug test refusal.

### 2. *The Proceedings Below*

On June 3, 2010, Pasternack commenced this action against LabCorp and ChoicePoint, seeking to recover damages for defendants' alleged tortious and fraudulent conduct in administering the random drug test.[4] Specifically, Pasternack alleged that he suffered damages as a result of the loss of his AME certification and airman certificates.

On August 1, 2011, the district court granted ChoicePoint's motion to dismiss. *Pasternack v. Lab. Corp. of Am.*, No. 10 Civ. 4426, 2011 WL 3478732, at *15 (S.D.N.Y. Aug. 1, 2011) ("*Pasternack I*"). On September 6, 2012, the district

---

[4] Pasternack based jurisdiction on diversity of citizenship of the parties. *See* 28 U.S.C. § 1332.

- 9 -

court granted Pasternack's motion for leave to file a second amended complaint as to LabCorp, but denied Pasternack's motion for leave to amend his complaint as to ChoicePoint, concluding that it would be futile. *Pasternack v. Lab. Corp. of Am.*, 892 F. Supp. 2d 540 (Sept. 6, 2012) ("*Pasternack II*"). On September 12, 2012, Pasternack filed a second amended complaint, asserting claims for negligence, gross negligence, negligent misrepresentation, fraud, and injurious falsehood against LabCorp. On September 29, 2014, the district court granted LabCorp's motion to dismiss. *Pasternack v. Lab. Corp. of Am.*, No. 10 Civ. 4426, 2014 WL 4832299, at *21 (S.D.N.Y. Sept. 29, 2014) ("*Pasternack III*"). On September 30, 2014, the district court entered judgment against Pasternack and closed the case.

This appeal followed.

## *DISCUSSION*

We review *de novo* the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6), accepting as true all allegations in the complaint and drawing all reasonable inferences in favor of the non-moving party. *Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*, 742 F.3d 37, 40 (2d Cir. 2014).

We may certify questions "where the New York Court of Appeals has not spoken clearly on an issue and we are unable to predict, based on other

decisions by New York courts, how the Court of Appeals would answer a certain question." *Tire Eng'g & Distribution L.L.C. v. Bank of China Ltd.*, 740 F.3d 108, 114 (2d Cir. 2014) (internal quotation marks omitted). Certification is permitted where "we encounter 'determinative questions of New York law . . . for which no controlling precedent of the Court of Appeals exists.'" *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 450 (2d Cir. 2013) (quoting N.Y. Ct. App. Local R. 500.27(a)). Our decision to certify is made after considering three questions:

> (1) whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to predict how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified question is determinative of a claim before us.

*Osterweil v. Bartlett*, 706 F.3d 139, 142 (2d Cir. 2013) (quoting *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 109 (2d Cir. 2012)).

This appeal presents two issues: (a) whether under New York negligence law a drug testing company owes a duty of care to the subject of a drug test based on federal regulations governing drug testing, and (b) whether under New York law a fraud claim can be based on false representations made

- 11 -

by a defendant to a third party whose reliance on the representations results in injury to the plaintiff.

## A.   *The Negligence Claims*

### 1.   *Applicable Law*

The elements of a negligence claim under New York law are: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002) (citing *Merino v. New York City Transit Auth.*, 218 A.D.2d 451 (1st Dep't 1996)).  If the defendant owes no duty to the plaintiff, the action must fail.  "Although juries determine whether and to what extent a particular duty was breached, it is for the courts first to determine whether any duty exists." *Darby v. Compagnie Nat'l Air France*, 96 N.Y.2d 343, 347 (2001).  "[T]he definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration." *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (1994).

The district court dismissed the negligence claims against LabCorp and ChoicePoint, holding that, under New York law, a drug testing company

owes no duty of care to properly interpret and apply federal drug testing regulations and guidelines promulgated by the FAA and the DOT. Hence, it is necessary to briefly summarize the relevant regulatory provisions. We outlined the regulatory scheme at issue in *Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48 (2d Cir. 2006) ("*Drake II*"):

> Pursuant to [the power granted by the Federal Aviation Act] . . . the FAA promulgated regulations mandating that all aviation-industry employees who perform safety-sensitive functions be subjected to random drug-testing. . . . The FAA regulations incorporate by reference DOT regulations that set out detailed protocols to be followed by drug-testing laboratories. The DOT regulations provide, among other things, that laboratories must use chain-of-custody procedures to document each time a urine specimen is handled or transferred, that an employer's designated MRO must review and certify test results before the laboratory reports them to the employer, and that laboratories must report test results to an MRO in writing.

*Id.* at 56-57 (citations omitted). Though the DOT regulations set out rules for the conduct of drug tests, they "do not specifically address negligence on the part of drug-testing laboratories or otherwise establish the minimum standard of care to be exercised by laboratory personnel." *Id.* at 57.

- 13 -

### a. *Duties of the Specimen Collector*

"The procedures for collection of urine under [49 C.F.R. pt. 40] are very specific and must be followed whenever a DOT-required urine specimen collection is performed." DOT, *Urine Specimen Collection Guidelines* at 3 (Dec. 2006) ("*2006 Urine Specimen Collection Guidelines*").[5] Collectors "must be knowledgeable" about the regulations and procedures. 49 C.F.R. § 40.33(a). Under the regulations, an employee is deemed to "have refused to take a drug test" when he "[f]ail[s] to remain at the testing site until the testing process is complete." 49 C.F.R. § 40.191(a)(2).

Section 40.193 sets forth a "shy bladder" protocol -- the procedures that apply when an employee does not provide a sufficient amount of urine for a drug test. In that circumstance, the collector "must . . . [u]rge the employee to drink up to 40 ounces of fluid, distributed reasonably through a period of up to

---

[5] These guidelines have since been revised and the following note has been added to the "shy bladder" protocol, which has been moved from § 7 to § 8:

> Note: As with other collections situations, there is no requirement for the collector to inform the employee in a shy bladder situation that failure to remain at the collection site or otherwise fails to cooperate with the testing process constitutes a refusal. It is a best practice for the collector to inform the employee that such behavior could lead an employer to determine that a refusal occurred.

DOT, *Urine Specimen Collection Guidelines* (July 2014) at 21, https://www.fta.dot.gov/documents/Urine_Specimen_ Collection_ Guidelines_July3_2014_A.pdf.

three hours," unless the person provides a sufficient urine specimen before the three-hour period has elapsed. 49 C.F.R. § 40.193(b)(2). If an employee "refuses to make the attempt to provide a new urine specimen or leaves the collection site before the collection process is complete," the collector is instructed to discontinue the collection and note that fact on the CCF. 49 C.F.R. § 40.193(b)(3). These actions are deemed "a refusal to test." *Id. See also 2006 Urine Specimen Collection Guidelines* § 7(3)-(4).

### b. *Duties of the MRO*

The DOT regulations likewise impose obligations on MROs with respect to drug testing procedures. In general, an MRO "must act to investigate and correct problems where possible and notify appropriate parties (e.g., [U.S. Department of Health and Human Services], DOT, employers, service agents) where assistance is needed, (e.g., cancelled or problematic tests, incorrect results, problems with blind specimens)." 49 C.F.R. § 40.123(e). Of particular relevance is § 40.355, which provides that an MRO "must not make a determination that an employee has refused a drug or alcohol test. This is a non-delegable duty of the actual employer." 49 C.F.R. § 40.355(i). An MRO, however, may "provide advice and information to employers regarding refusal-to-test issues." *Id.*

- 15 -

**2.** *Application*

In his claims against ChoicePoint, Pasternack alleges that the MRO wrongfully determined that his leaving the testing site constituted a "refusal to test" and wrongfully communicated that determination to Northeastern. Pasternack premised his motion for leave to amend his Amended Complaint as to ChoicePoint on the theory that the MRO violated two DOT regulations in particular.

First, Pasternack relies on 49 C.F.R. § 40.123(e), which provides that the MRO "must act to investigate and correct problems where possible and notify appropriate parties . . . where assistance is needed . . . ." The district court held that "as a matter of law . . . any obligation imposed by this regulation is -- in the context of this case -- too vague to serve as the basis for a negligence action." *Pasternack II*, 892 F. Supp. 2d at 554.

Second, Pasternack points to 49 C.F.R. § 40.355(i), which provides that the MRO "must not make a determination that an employee has refused a drug or alcohol test," and that the ability to make such a determination "is a non-delegable duty of the actual employer." Pasternack alleges that ChoicePoint

violated this regulation by transmitting to Northeastern a one-page form that reported Dr. Pasternack as a "refusal to test."

The district court rejected this argument. First, the district court held that if ChoicePoint's violation of § 40.355(i) were sufficient to establish a claim, that would essentially grant test subjects a private right of action for violation of FAA and DOT regulations, a concept which this Court has rejected. *Pasternack II*, 892 F. Supp. 2d at 555 n.7 (citing *Drake II*, 458 F.3d at 64) (Federal Aviation Act "does not provide a private right of action for violations of FAA drug-testing regulations")). Second, the district court held that Pasternack would therefore have to identify a state law negligence claim to proceed, and "no case suggest[s] that a violation of 49 C.F.R. § 40.355(i) provides a basis for a negligence action under New York law." *Id.* at 555. Thus, the district court denied Pasternack's motion for leave to amend as to ChoicePoint. *Id.* at 556-57.

In his Second Amended Complaint, Pasternack alleges that LabCorp breached a duty to him by failing to comply with the DOT Regulations and Guidelines. Specifically, Pasternack alleges that LabCorp breached its duty by failing to (i) explain the "shy bladder" procedure to him, (ii) urge him to wait and drink fluid, and (iii) inform him that he was required to remain at the testing site

- 17 -

and that leaving could result in a "refusal to test." The Guidelines and the Regulations, both of which are non-binding, call for such explanations and warnings. *See* 49 C.F.R. §§ 40.191, 40.193, 40.33; *2006 Urine Specimen Collection Guidelines* § 7(3)-(4).

LabCorp moved to dismiss, and the district court granted the motion. *Pasternack III,* 2014 WL 4832299, at *1. The district court found that Pasternack's negligence claims against LabCorp were "premised solely on violations of the DOT Regulations and Guidelines," and "Pasternack has cited no case suggesting that a violation of the DOT Regulations or Guidelines that he relies on gives rise to a negligence claim under New York law . . . . Pasternack has likewise cited no case suggesting that the omissions alleged here . . . give rise to a cognizable breach of the duty of care under New York law." *Id.* at *13.

In dismissing the negligence claims against LabCorp and ChoicePoint, the district court distinguished this case from three cases in which a drug testing laboratory or MRO had a contractual relationship with its test subjects by virtue of the test subjects' employment with the lab or MRO. In each of these cases, the laboratory or MRO directly mishandled the urine specimen. *See, e.g.*, *Drake v. Lab. Corp. of Am.*, No. 02-CV-1924, 2007 WL 776818, at *2-3

(E.D.N.Y. Mar. 13, 2007) ("*Drake III*"), *on remand from* 458 F.3d 48 (2d Cir. 2006) (MRO allegedly sent someone else's sample to toxicology laboratory, but claimed sample belonged to plaintiff); *Coleman v. Town of Hempstead*, 30 F. Supp. 2d 356, 365 (E.D.N.Y. 1999) (laboratory allegedly failed to maintain seal on plaintiff's urine sample); *Santiago v. Greyhound Lines, Inc.*, 956 F. Supp. 144, 153 (N.D.N.Y. 1997) (plaintiff's urine sample tested positive for cocaine while contained in bottle on which plaintiff's signature had been forged). Here, Pasternack neither had a contractual relationship with LabCorp or ChoicePoint, nor did these defendants directly mishandle his urine sample.

Pasternack relies heavily on the recent decision of the New York Court of Appeals in *Landon v. Kroll Lab. Specialists, Inc.*, 22 N.Y.3d 1 (2013), where the Court of Appeals affirmed the denial of a motion to dismiss a claim brought by a probationer against a drug testing laboratory for purportedly failing to use reasonable care in "the testing of [his] biological sample," which caused a false positive test result. *Id.* at 6. Pasternack argues that *Landon* controls here. In contrast, defendants argue that, in light of our holding in *Drake II* that there is no private right of action for violations of federal testing regulations, a test

administrator does not owe a duty of reasonable care based on federal governmental regulations and guidelines.

First, we note that the New York Court of Appeals has not addressed the issue before us, for *Landon* did not address the question of whether the federal regulatory scheme creates a duty of care for drug testing companies. Decisions of other New York courts do not permit us to confidently predict how the Court of Appeals would rule. Second, the issue implicates important matters of state law -- the duty of care applicable to drug testing companies. The DOT regulations apply not just to the airline industry, but to other transportation industries as well, and questions of public safety are implicated. Third, the certified question is determinative of Pasternack's negligence claims; if the federal regulations and guidelines do not create a duty of care, the claims fail. Accordingly, we certify the question to the New York Court of Appeals.

**B.** *The Fraud Claims*

Under New York law, the elements of a fraud claim are "a representation of material fact, falsity, scienter, reliance and injury." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (1999). The parties in this case principally

disagree over whether, for purposes of establishing the elements of a fraud claim under New York law, "reliance" can be a third party's rather than the plaintiff's.

Pasternack contends that the investigators -- third parties rather than Pasternack himself -- relied on LabCorp's false statements, to his detriment. He alleges that LabCorp's employee, Montalvo, made false statements to the FAA investigators, which induced the investigators to conclude that Pasternack had prevented Montalvo from giving him the warnings required by the regulations. The district court dismissed the fraud claims, holding that under New York law a fraud claim cannot be based on a false representation made to and relied upon by a third party whose reliance causes injury to the plaintiff. The district court relied on a strand of Second Circuit cases holding that New York fraud law does not contemplate third-party reliance. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 148 F.3d 194, 196 (2d Cir. 1998) ("[A] plaintiff does not establish the reliance element of fraud for purposes of . . . New York law by showing only that a third party relied on a defendant's false statements."); *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 454 (2d Cir. 2008) ("[A]llegations of third-party reliance . . . are insufficient to make out a common law fraud claim under New York law."), *rev'd on other grounds sub nom. Hemi*

*Group, LLC v. City of New York*, 559 U.S. 1 (2010). Instead, these decisions hold

that a plaintiff asserting a fraud claim must "plead 'reasonable reliance *on the part*

*of the plaintiff.*'" *Smokes-Spirits.com, Inc.*, 541 F.3d at 454 (quoting *Crigger v.*

*Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)).

Despite the holdings in *Lollo* and *Smokes-Spirits*, Appellate Division

courts as well as the federal district courts are divided on the issue. *See*

*Pasternack III*, 2014 WL 4832299, at \*15-16 (collecting cases); *compare, e.g.*,

*Briarpatch Ltd., L.P. v. Frankfurt Garbus Klein & Selz, P.C.*, 13 A.D.3d 296, 297 (1st

Dep't 2004) (holding that fraud claims were properly dismissed where "[t]he only

alleged misrepresentation concerned a letter from defendant . . . to a third party,

on which plaintiffs [could not] and [did] not claim reliance"), *with Buxton Mfg.*

*Co. v. Valiant Moving & Storage, Inc.*, 239 A.D.2d 452, 453-54 (2d Dep't 1997)

(holding that defendant could be liable for fraud for false statements made to

and relied on by Department of Agriculture, resulting in injury to plaintiff).

The New York Court of Appeals has not directly addressed the question,

but the Appellate Division cases that have endorsed third-party reliance have

generally done so by relying on a line of cases originating with three New York

Court of Appeals cases from the 1800s. *See Eaton, Cole & Burnham Co. v. Avery*, 83

N.Y. 31 (1880); *Rice v. Manley*, 66 N.Y. 82 (1876); *Bruff v. Mali*, 36 N.Y. 200 (1867). As the district court notes, however, the three cases are distinguishable. In *Eaton* and *Bruff*, the third parties acted as conduits to relay the false statements to the plaintiffs, who then relied on the false statements to their detriment. *Eaton*, 83 N.Y. at 33, 35; *Bruff*, 36 N.Y. at 200-02, 206. *Rice* expressly declined to resolve the issue, noting in *dicta* that "it matters not whether false representations be made to the party injured or to a third party." *Rice*, 66 N.Y. at 87. *Eaton*, *Bruff*, and *Rice* thus do not answer the question before us.

Certification is appropriate in this case because (1) the New York Court of Appeals has not directly addressed the issue of third-party reliance in a fraud case and the decisions of other New York courts do not permit us to predict how the Court of Appeals would resolve the issue; (2) the question is important to the state and implicates issues of policy; and (3) the question is "determinative of a claim before us." *In re Thelen LLP*, 736 F.3d 213, 224 (2d Cir. 2013) (internal quotation marks omitted).

## *CONCLUSION*

We reserve decision, and for the reasons stated above, we certify the following questions of law to the New York Court of Appeals:

*First*, whether drug testing regulations and guidelines promulgated by the FAA and DOT create a duty of care for drug testing laboratories and program administrators under New York negligence law; and

*Second*, whether a plaintiff may establish the reliance element of a fraud claim under New York law by showing that a third party relied on a defendant's false statements resulting in injury to the plaintiff.

The Court of Appeals is not limited to the particular questions stated. Rather, the Court of Appeals may modify the certified questions, and may direct the parties to address any other issues that may pertain to the circumstances presented in this appeal.

This panel retains jurisdiction and will consider any issues that remain on appeal once the New York Court of Appeals has ruled.

It is therefore **ORDERED** that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with complete sets of briefs and appendices, and the records filed in this Court by the parties.

*CERTIFICATE*

The foregoing is hereby certified to the Court of Appeals of the State of New York pursuant to Second Circuit Local Rule 27.2 and New York Codes, Rules, and Regulations Title 22, § 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit.